UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| BILLY MCCLAIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. 5:23-cv-00592-LCB |
| KERRY WARREN, et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Billy McClain asserts claims of race discrimination, hostile work environment, retaliation, and failure to promote, pursuant to Title VII of the Civil Rights Act of 1964, as amended, against Defendant Athens State University (ASU), his employer. He also asserts claims of race discrimination, hostile work environment, and retaliation, pursuant to 42 U.S.C. §§ 1981 & 1983, against Defendant Kerry Warren, his supervisor, in Warren's individual capacity. He asserts a claim for failure to promote pursuant to 42 U.S.C. §§ 1981 & 1983 against Defendant Mike McCoy, the head of the ASU Human Resources Department, in McCoy's official capacity. He asserts a first amendment retaliation claim pursuant to 42 U.S.C. § 1983 against Defendants Warren and McCoy, in their respective individual and official capacities. (Doc. 10).

On December 30, 2024, Defendants filed a motion to enforce a settlement agreement entered into between the parties at the conclusion of mediation on August

7, 2024. (Doc. 30). The parties agreed upon the terms of settlement during mediation, and though the terms remain confidential, the parties signed a Mediation Term Sheet reflecting those terms before departing the mediation. (*Id.* ¶ 7). The Mediation Term Sheet "includes the necessary provisions to settle all of Plaintiff's claims in this lawsuit, monetary and otherwise, including a general release of all claims and a confidentiality provision." (*Id.*). The Term Sheet also declared Defendants' attorney would draft a "General Release" for the parties' signatures. (*Id.*).

Pursuant to the Term Sheet, on August 16, 2024, ASU began paying McClain monetary benefits. As of December 31, 2024, when Defendants filed the motion to enforce settlement agreement, ASU continued to make such payments, and McClain continued to accept them. (*Id.* ¶ 9).

On August 30, 2024, Defendants' attorney drafted a General Release for Plaintiff's review, and on September 4, 2024, McClain's attorney proposed two minor changes to the document. Defendants accepted the proposed changes, and McClain's attorney agreed to promptly send the General Release to McClain for execution. (*Id.* ¶¶ 10-11; Doc. 30-1, at 2). However, McClain did not sign the General Release.

On December 9, 2024, McClain's attorney filed a status report stating he proposed changes to the "settlement agreement" and requesting additional time to update the court regarding the settlement. (Doc. 28, ¶¶ 1-2). According to Defendants, McClain's December 9, 2024, proposed revisions "gutted the release's confidentiality provision and deleted a paragraph that provided that [McClain] would not sue Athens

State for any claims arising from his employment that were to be released by the General Release." (Doc. 30, ¶ 16). On December 12, 2024, McClain's attorney informed Defendants' attorney and the mediator that McClain did not agree "with the settlement agreement terms," and he "does not wish to resolve his lawsuit via a settlement at this time." (*Id.* ¶ 17). On December 31, 2024, Defendants filed the instant motion to enforce the settlement agreement.

Defendants assert the August 7, 2024, Mediation Term Sheet binds the parties as it reflects all essential terms of the parties' agreement, and it satisfies the requirements of offer, acceptance, and consideration. According to Defendants, McClain's acceptance of payments further reflects his assent to the agreement reflected in the Term Sheet. In addition, Defendants assert McClain's attorney assented to the terms of the General Release through his September 4, 2024, communications, and the court should bind McClain to his attorney's assent.

McClain opposes the motion to enforce the settlement agreement. (Doc. 32). He argues the Mediation Term Sheet did not constitute a binding agreement, as it did not reflect a meeting of the parties' minds. McClain asserts he "was pressured into agreeing to terms that included the release of all claims," and he lacked the capacity to assent to the terms due to the emotional distress and pressure he felt during the mediation. He states he expressed a desire to take his chances with pursuing summary judgment rather than settlement, yet "everyone was against that decision," so he acquiesced. (*Id.* at 7). McClain also asserts he rescinded any offer to settle before the

3

Athens State University Board of Trustees ratified the terms of the agreement by a full vote during a regular meeting. (*Id.* at 8-10).

On January 9, 2025, United States District Judge Liles C. Burke held a hearing on the motion to enforce settlement agreement. During the hearing, Defendants' attorney represented that McCoy participated in the mediation with ASU's full authority, and McCoy communicated by phone with the ASU President on several occasions during the mediation. He also represented the settlement amount did not reach the threshold of financial transactions that required Board approval, and ASU's insurer, not the University itself, would pay the settlement. (Doc. 39, at 11-12, 15).

McClain's attorney asserted "the whole process" of the mediation caused McClain to feel as though he could not express his preference to proceed with the case rather than settle. (*Id.* at 6). McClain testified he had never before participated in a mediation, he did not understand court procedures like summary judgment, he felt pressured from the beginning of the mediation, and the proceeding exhausted him. (*Id.* at 20-21). He identified comments from the mediator that caused him to feel pressure, but he also included his own attorney as part of "the whole process [that] coerced [him] into signing the Mediation Term Sheet." (*Id.* at 22, 24).

Thus, questions arose whether Defendants could or should call McClain's attorney as a witness vis-a-vis the mediator's statements and any alleged coercion occurring during the mediation, and whether the attorney would need to disqualify

4

himself from representing McClain if he testified. (*Id.* at 27-32). Pursuant to Judge Burke's directive, the parties briefed those questions. (Docs. 38, 40-42).

McClain's attorney also compared McClain's mental state, which resulted from allegedly enduring years of race discrimination and a hostile work environment, to workplace post-traumatic stress syndrome (PTSD). The workplace trauma McClain allegedly endured "left him unduly vulnerable to coercion and undue influence," impaired his executive functioning, and rendered him an "eggshell plaintiff." (Doc. 40, at 1-5).

Judge Burke set a second hearing for February 20, 2025, but on February 19, 2025, he converted that hearing to an in-person status conference before the undersigned. (Doc. 43). The undersigned conducted the status conference and set an evidentiary hearing for March 25, 2025. (Doc. 44).

A review of pertinent legal principles resolves the issues whether the mediator and McClain's attorney should testify at the hearing, and concomitantly, whether the attorney's testimony would disqualify the attorney from continuing to represent McClain.

The standards governing enforcement of settlements in federal court reflect well-settled legal principles. Prior to dismissal of an action, a district court retains jurisdiction to enforce a settlement agreement. *Reed By & Through Reed v. United States*, 891 F.2d 878, 880 (11th Cir. 1990) (citing *Kent v. Baker*, 815 F.2d 1395 (11th Cir. 1987)). Motions to enforce settlement agreements constitute equitable actions to specifically enforce a

5

contract. *Ford v. Citizens & S. Nat'l Bank, Cartersville*, 928 F.2d 1118, 1122 (11th Cir. 1991) (citations omitted). As a purely equitable matter, the court sustains the authority to resolve such motions without resort to a jury. *Id.* (citation omitted). Furthermore, the law accords the court discretionary authority in the enforcement of a settlement agreement. *Tavorn v. Shockley*, 230 F. App'x 888, 889 (11th Cir. 2007) (citations omitted).

Indeed, the court maintains authority to "summarily enforce a settlement agreement without an evidentiary hearing." *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994). However, this authority arises when the court seeks to enforce "only complete settlement agreements. 'Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute,'" the court must afford the parties an evidentiary hearing. *Id.* (quoting *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987)) (emphasis in original).

Alabama legal principles regarding enforcement of settlements mirror the previously-reviewed federal law.[1] A "stipulated compromise" represents a contract

---

[1] As the disputed agreement arose in Alabama between two private parties, Alabama law applies, even though McLain's underlying claims invoke federal law. *See Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000) ("[E]ven though this settlement agreement arose under the ADA, state contract law directs our analysis here."); *Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999) (State contract law "governs the construction and enforcement of settlement agreements" in federal court." (citing *Blum v. Morgan Guaranty Trust Co. of New York*, 709 F.2d 1463, 1467 (11th Cir. 1983))); *Schwindler v. Comm'r, Georgia Dep't of Corr.,* No. 23-10457, 2024 WL 3666251, at *4 (11th Cir. Aug. 6, 2024) (citing *Resnick*, 227 F.3d at 1350) ("Even though the parties' alleged settlement agreement arose in the context of Schwindler's federal law claims, state contract law directs our analysis."); *Alassmar v. City of Homewood*, No. 2:10-CV-2100-TMP, 2012 WL 13026677, at *4 (N.D. Ala. Mar. 12, 2012) ("Alabama law governs whether the parties reached an enforceable settlement agreement.") (citing *In re Chira*, 567 F.3d 1307, 1311 (11th Cir. 2009)). Courts "generally disfavor

6

"governed by legal principles applicable to contracts generally. The primary object of judicial interpretation of such an agreement is to effectuate the intention of the parties in light of the language used and circumstances surrounding its making." *Jones v. Bullington*, 401 So. 2d 740, 741 (Ala. 1981) (citing 15A Am. Jur. 2d Compromise and Settlement § 23 (1976)).  Thus, a "'settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced.  When parties who are sui juris make a final settlement between themselves, such settlement is as binding on them in many respects as a decree of the court." *Mays v. Julian LeCraw & Co.*, 807 So. 2d 551, 554 (Ala. Civ. App. 2001) (citation omitted); *see also Stoudmire v. U.S. Xpress, Inc.*, No. 2:12-CV-1055-MHT, 2013 WL 1363484, at *3 (M.D. Ala. Apr. 3, 2013) ("Settlement agreements are contracts, and, like other contracts, once a party has manifested assent to an agreement that meets all requirements for a legally binding contract, the party is bound.")  (citations omitted).

McClain manifested his assent to the Mediation Term Sheet by signing it.  *See id.* ("Stoudmire signed the settlement agreement, thereby manifesting his assent."); *Southern Energy Homes, Inc. v. Hennis,* 776 So.2d 105, 108 (Ala. 2000) ("Ordinarily, [assent] is manifested by a signature.").  Thus, to avoid his obligations under the Mediation Term

---

federal common law and apply it in only rare instances concerning 'rights and obligation of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases.'" *Resnick*, 227 F.3d at 1350 n.4 (citations omitted).

Sheet, McClain must demonstrate the invalidity of the agreement. *See Stoudmire,* 2013 WL 1363484, at *3 ("[U]nless [the plaintiff who signed the agreement] shows some reason why the agreement is invalid, he is bound by it.").

McClain attempts to invalidate the Mediation Term Sheet by asserting he only entered into the agreement as a result of duress or undue influence.

For undue influence to invalidate an otherwise valid contract, "'the will of the influencing party [must have] so overpowered the will of the other party that the other party's act essentially became the act of the influencing party.'" *Id.* (alteration in original) (quoting *Fortis Benefits Ins. Co. v. Pinkley,* 926 So.2d 981, 988 (Ala. 2005)). If a non-party to the transaction (here, the mediator or McClain's attorney) induces a party's manifestation of assent, the victim (here, McClain) may avoid the contract. *Id.* (citing Restatement (Second) of Contracts § 177 (1981)).[2]

---

[2] The pertinent section of the Restatement provides:

> If a party's manifestation of assent is induced by one who is not a party to the transaction, the contract is voidable by the victim unless the other party to the transaction in good faith and without reason to know of the undue influence either gives value or relies materially on the transaction.

Restatement (Second) of Contracts § 177(3) (1981). *See also Taylor v. Kaiser Foundation Health Plan of the Northwest*, No. 3:11-cv-1551-ST, 2012 WL 6872629, *9 (D. Or. Nov. 7, 2012) (citations omitted) ("When evaluating whether a contract should be rescinded on the grounds of undue influence, the court's emphasis should be on 'the unfairness of the advantage which is reaped as a result of the wrongful conduct.' The key inquiry regarding duress and undue influence is the degree of coercion or manipulation between the contracting parties, not between one party to the contract and some third person. Here Taylor does not assert any coercion by defendants, only by her attorney and union representative.").

However, commentators have noted that "[i]t is difficult for a party to prove that a mediator is receiving an unfair advantage by getting the parties to settle." Sarah Cole, *et al.*, Mediation: Law, Policy and Practice § 7:13 (2024); *see Davenport v. Korik*, No. 2:14-cv-00325-TLN-DB(PC), 2016 WL 6039027, *6 (E.D. Cal. Oct. 14, 2016) (stating that even if the judge/mediator unduly influenced plaintiff into signing the agreement there can be no relief because the judge was not a "party to the settlement nor jointly interested with any party to the settlement").

In any event, the undue influence of a non-party will not warrant avoiding the contract "if 'the other party to the transaction . . . in good faith and without reason to know of the undue influence either gives value or relies materially on the transaction.'" *Id.* at *3 n.2 (quoting Restatement (Second) of Contracts § 177 (1981)). Here, ASU – the other party to the transaction – tendered payments under the terms of the parties' agreement, thereby providing value, and McClain accepted those payments. *Cf. id.* at *3 ("Since Stoudmire has not yet accepted U.S. Xpress's payment, [the] exception has no bearing here."). Moreover, there exists no indication ASU provided those payments in bad faith, or that ASU or either individual defendant knew of the undue influence McClain alleges. All interactions between McClain and the mediator, or between McClain and his attorney during the mediation, should have occurred outside the presence of ASU's attorney or representative. *See Culmone-Simeti v. New York City Dep't of Educ.*, No. 17-CIV.-2313-(ER), 2018 WL 3384437, at *6 (S.D.N.Y. July 11, 2018) ("Nowhere in her papers does Culmone-Simeti allege that the DOE had knowledge of

9

[alleged improper statements by Culmone-Simeti's attorney] that could support invalidating the agreement under which it performed."); *Vitakis-Valchine v. Valchine*, 793 So. 2d 1094, 1096 (Fla. Dist. Ct. App. 2001) (finding the defense of duress not applicable to alleged threats made by the mediator when the adverse party and his attorney played no role in, and had no knowledge, of the threats)

Thus, even if the mediator or McClain's attorney unduly influenced McClain into settling during mediation, McClain cannot avoid the agreement after ASU in good faith tendered payments pursuant to the agreement, and McClain accepted those payments.

McClain also "may be relieved of contractual obligations upon a showing that he was compelled to execute the agreement that is sought to be disavowed by economic duress." *Edwards v. Kia Motors Am., Inc.*, No. CV-05-S-1510-NE, 2006 WL 4738660, at *7 (N.D. Ala. May 18, 2006), *aff'd in part, question certified sub nom. Edwards v. Kia Motors of Am., Inc.*, 486 F.3d 1229 (11th Cir. 2007), *certified question answered,* 8 So. 3d 277 (Ala. 2008), and *aff'd sub nom. Edwards v. Kia Motors of Am., Inc.,* 554 F.3d 943 (11th Cir. 2009) (citing *Wilson v. Southern Medical Ass'n,* 547 So.2d 510, 513 (Ala. 1989)). [3]

---

[3] Alabama courts also recognize physical duress as a defense to contract enforcement. *See Shufford v. Integon Indem. Corp.*, 73 F. Supp. 2d 1293, 1298 (M.D. Ala. 1999) ("The Introductory Note to the topic 'Duress and Undue Influence' in the Restatement (Second) of Contracts, §§ 174-177 (1981), states that there are two types of duress, each with a slightly different legal effect. First, a person experiences duress when he is physically compelled to manifest assent to a contract, despite all his intentions to the contrary; this type of duress prevents the contract from ever forming, because the element of assent is lacking. . . . The second kind of duress occurs where a person is induced through improper threats to assent to a contract; in these cases, a contract is formed, but it is said to be voidable.").

10

To the extent McClain asserts Defendants subjected him to economic distress, the undersigned struggles to discern how establishing such duress would require the testimony of either the mediator or McClain's attorney. However, even if those individuals' testimony would bear relevance, other legal barriers exist to McClain's ability to establish the defense.

To demonstrate duress by ASU, the opposing party, McClain must portray: "'(1) wrongful acts or threats; (2) financial distress caused by the wrongful acts or threats; [and] (3) the absence of any reasonable alternative to the terms presented by the wrongdoer.'" *Penick v. Most Worshipful Prince Hall Grand Lodge F & A M of Alabama, Inc.*, 46 So. 3d 416, 431 (Ala. 2010) (citing *Wright Therapy Equip., LLC v. Blue Cross & Blue Shield of Alabama,* 991 So. 2d 701, 707 (Ala. 2008); *Int'l Paper Co. v. Whilden,* 469 So. 2d 560, 562 (Ala. 1985)).

Even if McClain could demonstrate Defendants caused him financial distress through wrongful acts or threats during the mediation, he cannot demonstrate he lacked a reasonable alternative to settlement. He could have proceeded with the litigation, and he manifested his awareness of that alternative by informing his attorney he wanted to take his chances with summary judgment. *See Reed v. Gallegos*, No. CIV.A. C-07-190,

---

McClain has not asserted any participant in the mediation physically compelled him to agree to the Mediation Term Sheet through use or threats of force. Accordingly, he asserts economic duress, not physical duress.

2008 WL 2714082, at *3 (S.D. Tex. July 9, 2008) (Plaintiff "had reasonable options other than settling his claims," as he "could also have sought redress in the courts."); *Kruse v. City of Birmingham*, 67 So. 3d 910, 916 (Ala. Civ. App. 2011) ("Alabama law recognizes that the mere threat of legal proceedings is insufficient to constitute the duress needed to make the payment of money involuntary.") (citations omitted); Sarah Cole, *et al.*, Mediation: Law, Policy and Practice § 7:9 (2024) ("It would be unusual in a court-connected mediation for a court to conclude that a party accepted a settlement offer because the alternative of going to court and participating in a fair trial is an unreasonable alternative."). Though he may now regret acquiescing, the standard requires only that the reasonable alternative existed. *See Int'l Paper Co.*, 469 So. 2d at 563 ("The entering into a contract with reluctance or even dissatisfaction with its terms because of economic necessity does not, of itself, constitute economic duress invalidating the contract.") (citation omitted); *Newburn v. Dobbs Mobile Bay, Inc.*, 657 So. 2d 849, 852 (Ala. 1995) ("A claim of economic duress cannot be based merely upon the claim that one has been the victim of another's hard bargain.").

To the extent McClain asserts his attorney and/or the mediator subjected him to duress, courts rarely avoid settlement agreements on those grounds.[4] In any event,

---

[4] *See, e.g., Murphy v. Institute of International Education*, 32 F.4th 146, 150-54 (2d Cir. 2022) (finding no duress when plaintiff was nervous, confused, intimidated, her attorney told her that "this was the nicer part of the process" and the mediator told her if "she continued, she 'would be stuck in a room filled with white men that would question every aspect of [her] life for hours,'" and she was told that the proposed agreement was the most compensation she would ever receive); *Gray v. City of Dothan*, No.

1:14-cv-592-MHT, 2016 WL 4231706, *6 (M.D. Ala. Aug. 9, 2016), *judgment entered*, 2016 WL 4254116 (M.D. Ala. Aug 9, 2016) (rejecting claim of duress when the judge/mediator sternly rebuked plaintiff for "wasting" the court's time and reminding him that if he lost defendant would be seeking attorneys' fees in excess of $700,000); *Ruffin v. Allstate Insurance Company*, No. 15-501 (NLH/AMD), 2016 WL 5745118, *6 (D.N.J. Sept. 30, 2016) (rejecting claim of duress caused by mediator's statements that Plaintiff was about to be fired or was effectively fired); *Estate of Skalka v. Skalka*, 751 N.E.2d 769, 770-72 (Ind. Ct. App. 2001) (affirming the trial court's enforcement of the settlement agreement where the trial judge in settlement posture stated: "But if you people want to continue fighting, I'm no longer going to be the mediator here, I'm going to be a judge. You are going to go through the cost of this thing. It's going to be financially draining and I can tell you you're going to wind up losing the property."); *Golden v. Hood*, No. E1999-02443-COA-MR3-CV, 2000 WL 122195, *1 (Tenn. Ct. App. Jan. 26, 2000) (complaining that the mediator represented that the jury would not award him full amount of medical expenses if he went to trial); *Shahzad v. Shahzad*, No. 2012-CA-001591-MR, 2013 WL 6157171 (Ky. Ct. App. Nov. 22, 2013), *review denied*, (June 11, 2014) (rejecting claim that dissolution agreement was unconscionable and entered into by duress when spouse "contended that she had been deceived with respect to the terms of the agreement; that she had been intimidated and harassed by the mediator; and that she had executed the separation agreement under duress"); *In re Marriage of Anton v. Sparks*, No. A16-0518, 2016 WL 7337097, *2 (Minn. Ct. App. Dec. 19, 2016) (rejecting a mediator duress claim that during the settlement conference the wife was ill, could barely sit up, was in pain and on medication with "widely known psychological side effects" and was pressured by the mediator who told her that the agreement was "the best deal she could hope for considering" the judge she was assigned to); *Chitkara v. New York Telephone Co.*, 45 F. App'x. 53, 55 (2d Cir. 2002) (affirming a trial court's order to enforce a mediated settlement despite plaintiff's claim that the settlement was procured through mediator coercion and fraudulent misrepresentation, noting that "[t]he nature of mediation is such that a mediator's statement regarding the predicted litigation value of a claim, where that prediction is based on a fact that can readily be verified, cannot be relied on by a counseled litigant whose counsel is present *at the time the statement is made");* In re BankAmerica Corp. Securities Litigation*, 210 F.R.D. 694, 705 (E.D. Mo. 2002) (rejecting a claim that a class action settlement should not be enforced because the mediator "strong-armed" class counsel); *Barnes v. Fischer*, No. 9:11-cv-583(NAM/DEP), 2015 WL 364236, *2 (N.D. N.Y. Jan. 27, 2015) (finding no duress when plaintiff claimed the magistrate told him, "'This is your first and last chance to settle because it would never happen again so [you] had better take advantage of this settlement opportunity[,]' thus creating 'duress, pressure, stress strain and overwhelming anxiousness for plaintiff to sign this ambiguous document'"); *Carter v. H2R Restaurant Holdings*, LLC, No. 3:16-cv-1554-N-BN, 2018 WL 1801663, *7 (N.D. Tex. Mar. 15, 2018), *report and recommendation adopted*, 2018 WL 1794501 (N.D. Tex. Apr. 16, 2018) (rejecting claim of duress and coercion when the mediator stated "during the mediation that he had handled the largest burn case in Texas's history and that Ms. Carter's case had little value"); *Goodman v. Lothrop*, 143 Idaho 622, 151 P.3d 818, 823 (2007) (finding that claims of duress, intimidation, and undue influence by the mediator were not supported by specific facts); *Emami v. Emami*, No. 02-21-00319-CV, 2022 WL 3273603, *7 (Tex. App. Ft. Worth Aug. 11, 2022) ("Indeed, it is the job of a good mediator to point out to the parties the flaws in their respective cases and the risks that they face if they do not reach an agreement").

McClain may not avoid the contract if "the other party to the transaction in good faith and without reason to know of the duress either gives value or relies materially on the transaction." Restatement (Second) of Contracts § 175(2) (1981).[5] As already discussed, ASU provided value by tendering payments pursuant to the terms of the Mediation Term Sheet, and McClain accepted those payments. Moreover, there exists no indication any Defendant knew of any putative duress McClain's attorney and/or the mediator may have imposed upon McClain.

In summary, McClain cannot present a viable argument that undue influence or duress would avoid the parties' agreement memorialized in the Mediation Term Sheet. As the potential testimony of McClain's attorney and the mediator during the March 25 evidentiary hearing bears relevance only to the defenses of undue influence or duress,

---

[5] No Alabama court or federal court applying Alabama law has discussed avoidance of a contract based upon duress by a non-party. However, other courts have done so, and there exists to reason to doubt Alabama courts would similarly follow the Restatement. As the Bankruptcy Court of the District of Connecticut observed in *In re Mason*, 300 B.R. 160 (Bankr. D. Conn. 2003), "[c]lassically, . . . the person accused of duress is also a party to the subject agreement." *Id.* at 167. Despite the Connecticut state courts' failure to address the distinction between duress by a party and duress by a non-party, the Bankruptcy Court looked to the Restatement for guidance on assessing non-party duress. *Id.* (citing Restatement (Second) of Contracts § 175(2) (1981)). *See also Aylaian v. Town of Huntington*, 459 F. App'x 25, 27 (2d Cir. 2012) (citing Restatement (Second) of Contracts § 175(2)) ("Although third-party duress may render a contract voidable, it cannot do so where the other contracting party gives value to the contract."); *Zurich Am. Ins. Co. v. Ascent Constr., Inc.*, No. 1:20-CV-00089-DBB-CMR, 2023 WL 6318106, at *16 (D. Utah Sept. 28, 2023), *appeal dismissed,* No. 23-4134, 2023 WL 11156341 (10th Cir. Dec. 26, 2023) (relying upon the Restatement to assess a claim of non-party duress); *Emps. Ins. of Wausau v. Bond*, No. CIV. A. HAR-90-1139, 1991 WL 8431, at *2 (D. Md. Jan. 25, 1991) (citing Restatement (Second) of Contracts § 175) ("[W]here the assent was induced by a third-party unrelated to the transaction and the opposing party to the transaction, without knowledge of the victim's duress, materially relied upon the victim's assent, the contract is not voidable.").

the court **ORDERS** that neither McClain's attorney nor the mediator shall testify during the March 25 hearing.

**DONE** and **ORDERED** this 3rd day of March, 2025.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE